## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

-------------------------------------------------------------x
                                               :

In re                                 :   Chapter 11
                                               :

*Sky Bridge Resorts Community, L.L.C.,*    :   Case No.  10-10345 (KG)
                                             :

                    Debtor.           :
                                             :
                                           :
                                           :
-------------------------------------------------------------x

## PLAN OF REORGANIZATION

**WOMBLE, CARLYLE, SANDRIDGE**
   **& RICE PLLC**
Steven K.  Kortanek (Del.  Bar No.  3106)
222 Delaware Avenue
Suite 1501
Wilmington, Delaware 19801
Telephone:  (302) 252-4320
Facsimile:  (302) 252-4330

Counsel for Sky Bridge Resorts Community, L.L.C.

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................................... 1

I.    DEFINED TERMS AND RULES OF INTERPRETATION ...................................................... 1

    **A.**    Rules of Construction ........................................................................... 1
    **B.**    Definitions ............................................................................................ 1
    **C.**    Rules of Interpretation ....................................................................... 12
    **D.**    Computation of Time ......................................................................... 12
    **E.**    Governing Law ................................................................................... 12
    **F.**    Exhibits .............................................................................................. 12

II.    CLASSIFICATION OF CLAIMS AND INTERESTS ............................................................ 12

    **A.**    Introduction........................................................................................ 12
    **B.**    Unsolicited and Unclassified Claims (not entitled to vote on the Plan) ........................... 13
        1.    503(b)(9) Claims................................................................. 13
        2.    Administrative Claims ....................................................... 13
    **C.**    Impaired Voting Claims and Unimpaired Non-Voting Claims ..................................... 13
        1.    Class 1A - MPF Secured Claim (impaired and entitled to vote) ....................... 13
        2.    Class 1B – Metropolitan National Bank Secured Claim (impaired and entitled to vote) ........................... 13
        3.    Class 1C – Other Mortgagee Secured Claims (impaired and entitled to vote) ........................... 13
        4.    Class 1D – Other Secured Claims (impaired and entitled to vote) ..................... 13
        5.    Class 2 - Unsecured Priority Claims (impaired and entitled to vote) ................. 13
        6.    Class 3 – Allowed General Unsecured Claims (impaired and entitled to vote) ........................... 13
    **D.**    Impaired Non-Voting Interests .......................................................... 13
        Class 4 – Membership Interest (impaired/extinguished and deemed to reject) ............... 13

III.    TREATMENT OF CLAIMS AND INTERESTS ...................................................................... 13

    **A.**    Unclassified Claims ........................................................................... 13
        1.    503(b)(9) Claims................................................................. 13
        2.    Administrative Claims ....................................................... 14
    **B.**    Impaired Voting Claims and Unimpaired Non-Voting Claims ..................................... 14
        1.    Class 1A - MPF Secured Claim (impaired and entitled to vote) ....................... 14
        2.    Class 1B – Metropolitan National Bank Secured Claim (impaired and entitled to vote) ........................... 14
        3.    Class 1C – Other Mortgagee Secured Claims (impaired and entitled to vote) ........................... 14
        4.    Class 1D – Other Secured Claims. ..................................... 14
        5.    Class 2 - Unsecured Priority Claims (impaired and entitled to vote) ................. 15
        6.    Class 3: General Unsecured Claims.................................... 15
    **C.**    Impaired Non-Voting Interests .......................................................... 15
        1.    Class 4: Intercompany Claims ........................................... 15
    **D.**    Special Provision Regarding Unimpaired Claims ............................. 15
    **E.**    Allowed Claims .................................................................................. 15
    **F.**    Special Provisions Regarding Insured Claims ................................... 16

| IV. | | ACCEPTANCE OR REJECTION OF THE PLAN | 16 |
|-----|------|-----------------------------------------------------------------|----|
| | **A.** | Impaired Classes of Claims Entitled to Vote | 16 |
| | **B.** | Acceptance by an Impaired Class | 16 |
| | **C.** | Presumed Acceptances by Unimpaired Classes | 16 |
| | **D.** | Classes Deemed to Reject Plan | 16 |
| | **E.** | Summary of Classes Voting on the Plan | 17 |
| **V.** | | MEANS FOR IMPLEMENTATION OF THE PLAN | 17 |
| | **A.** | Plan Financing | 17 |
| | **B.** | Corporate Action | 17 |
| | | 1. Transfer to and Vesting of Assets in Reorganized Sky Bridge | 17 |
| | | 2. Post-Effective Date Professional Fees, Final Fee Applications | 17 |
| | | 3. Legal Representation of the Debtor After the Effective Date | 17 |
| | | 4. No Further Action | 17 |
| | | 5. Effectuating Documents; Further Transactions | 18 |
| | **C.** | Sources for Plan Distribution | 18 |
| | **D.** | Powers and Duties of Reorganized Sky Bridge | 18 |
| | **E.** | Accounts | 20 |
| | **F.** | Release of Liens | 20 |
| | **G.** | Exemption from Certain Transfer Taxes | 20 |
| | **H.** | Preservation and Settlement of Causes of Action and Avoidance Actions | 20 |
| | | 1. Preservation of Causes of Action and Avoidance Actions | 20 |
| | | 2. Settlement of Causes of Action and Avoidance Actions | 20 |
| | | 3. Plan Supplement | 21 |
| | **I.** | Effectuating Documents; Further Transactions | 21 |
| **VI.** | | PROVISIONS GOVERNING DISTRIBUTIONS | 21 |
| | **A.** | Distributions for Claims Allowed as of the Effective Date | 21 |
| | **B.** | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 21 |
| | | 1. Delivery of Distributions in General | 21 |
| | | 2. Undeliverable and Unclaimed Distributions | 22 |
| | **C.** | Prepayment | 22 |
| | **D.** | Means of Cash Payment | 22 |
| | **E.** | Interest on Claims | 22 |
| | **F.** | Withholding and Reporting Requirements | 23 |
| | **G.** | Setoffs | 23 |
| | | 1. By the Debtor or Reorganized Sky Bridge | 23 |
| | | 2. By Non-Debtor | 23 |
| | **H.** | Procedure for Treating and Resolving Disputed, Contingent and/or Unliquidated Claims | 23 |
| | | 1. Objection Deadline; Prosecution of Objections | 23 |
| | | 2. No Distributions Pending Allowance | 24 |
| | | 3. Distributions After Allowance | 24 |
| | | 4. *De Minimis* Distributions | 24 |
| | **I.** | Fractional Dollars | 25 |
| | **J.** | Allocation of Plan Distributions Between Principal and Interest | 25 |
| | **K.** | Distribution Record Date | 25 |
| **VII.** | | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 25 |
| | **A.** | Rejected Contracts and Leases | 25 |

|  | **B.** | Bar to Rejection Damages | 25 |

**VIII.** CONFIRMATION AND CONSUMMATION OF THE PLAN ........................................ 26

|  | **A.** | Conditions to Confirmation .................................................................. 26 |
|  | **B.** | Conditions to Effective Date ................................................................ 26 |
|  | **C.** | Waiver of Conditions ........................................................................... 26 |
|  | **D.** | Consequences of Non-Occurrence of Effective Date ........................... 27 |

**IX.** ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS ................... 27

|  | **A.** | Professional Fee Claims ....................................................................... 27 |
|  |  | 1. Final Fee Applications ................................................................ 27 |
|  |  | 2. Employment of Professionals after the Effective Date ............... 27 |
|  | **B.** | Substantial Contribution Compensation and Expenses Bar Date ......... 27 |
|  | **C.** | Other Administrative Claims ................................................................ 27 |

**X.** EFFECT OF PLAN CONFIRMATION .................................................................. 28

|  | **A.** | Binding Effect ...................................................................................... 28 |
|  | **B.** | Discharge of the Debtor ....................................................................... 28 |
|  | **C.** | Releases ................................................................................................ 28 |
|  | **D.** | Releases of Management by Holders of Claim and Equity Interests ..... 28 |
|  | **E.** | Justification for Releases by the Debtor and Reorganized Sky Bridge .......... 28 |
|  | **F.** | Injunction ............................................................................................. 29 |
|  | **G.** | Exculpation and Limitation of Liability ............................................... 29 |
|  | **H.** | Justification for Exculpation and Limitation of Liability ..................... 29 |
|  | **I.** | Term of Bankruptcy Injunction or Stays ............................................. 30 |
|  | **J.** | Compromises and Settlements .............................................................. 30 |
|  | **K.** | Indemnification Obligations ................................................................. 30 |
|  | **L.** | Settlement of Claims and Controversies .............................................. 30 |

**XI.** RETENTION OF JURISDICTION ....................................................................... 30

**XII.** MISCELLANEOUS PROVISIONS ...................................................................... 32

|  | **A.** | Modifications and Amendments ........................................................... 32 |
|  | **B.** | Severability of Plan Provisions ............................................................ 33 |
|  | **C.** | Successors and Assigns ........................................................................ 33 |
|  | **D.** | Payment of Statutory Fees ................................................................... 33 |
|  | **E.** | Plan Supplement .................................................................................. 33 |
|  | **F.** | Service of Documents .......................................................................... 34 |
|  | **G.** | Plan Supplement(s) .............................................................................. 34 |
|  | **H.** | Tax Reporting and Compliance ............................................................ 34 |
|  | **I.** | Filing Of Additional Documents ......................................................... 35 |

EXHIBITS

EXHIBIT A     NON-EXCLUSIVE LIST OF CAUSES OF ACTION AND AVOIDANCE ACTIONS

EXHIBIT B     REJECTED CONTRACTS AND LEASES

**Note: To the extent that the foregoing Exhibits are not annexed to this Plan, such Exhibits will be filed with the Bankruptcy Court in Plan Supplement(s) filed on or before the date(s) set for the filing of such documents and forms of documents**.

# INTRODUCTION

Sky Bridge proposes the following chapter 11 plan of reorganization (the "Plan"). This Plan contemplates the reorganization of the Debtor's assets and the resolution of the outstanding Claims against and Interests in the Debtor. Reference is made to the Disclosure Statement (as defined below), for a discussion of (i) the Debtor's history, business, properties, and operations, (ii) a summary and analysis of this Plan, and (iii) certain related matters, including risk factors relating to the consummation of this Plan. All Holders of Claims who are eligible to vote on the Plan are encouraged to read the Plan and the Disclosure Statement (including all exhibits thereto) in their entireties before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127 and Bankruptcy Rule 3019, Sky Bridge reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation. Sky Bridge is the proponent of the Plan (the "Plan Proponent") within the meaning of Bankruptcy Code section 1129.

The Plan is a plan of reorganization. The Plan provides for the new financing in order to fund the payment of Administrative Claims and otherwise to treat Holders of Allowed Claims in the manner provided for in the Plan. The Plan also provides for distributions to be made to Holders of Allowed Claims. The Plan further provides for the termination of all Interests in the Debtor and the issuance of new Membership Interests in Reorganized Sky Bridge.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS THERETO) AND THE PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## I. DEFINED TERMS AND RULES OF INTERPRETATION

### A. *Rules of Construction*

For purposes of this Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined, including those capitalized terms used in the preceding Introduction, shall have the meanings ascribed to them in Article I of this Plan or any Exhibit hereto. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. To the extent that there is an inconsistency between a definition in this Plan and a definition set forth in the Bankruptcy Code, the definition set forth herein shall control. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

### B. *Definitions*

**1.1.** ***503(b)(9) Claim*** means each Claim to the extent asserted against the Debtor pursuant to Bankruptcy Code section 503(b)(9).

**1.2.** ***503(b)(9) Claim Bar Date*** means the bar date for filing any 503(b)(9) Claim, which date shall be 30 days following the Effective Date.

**1.3.** ***503(b)(9) Claims Objection Deadline*** means the last day for Filing an objection to any request for the payment of a 503(b)(9) Claim, which for substantive objections is ninety (90) days after the Effective Date.

**_1.4._     _Administrative Claim_** means a Claim arising under Bankruptcy Code section 507(a)(2) for costs and expenses of administration of the Chapter 11 Case under Bankruptcy Code sections 503(b), 507(b), or 1114(e)(2), including: (a) any actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the businesses of the Debtor (such as Trustee Fee Claims, Assumed Liabilities Claims, wages, salaries and commissions for services and payments for inventory, leased equipment and premises) and (b) all other claims entitled to administrative claim status pursuant to a Final Order of the Bankruptcy Court, but excluding Non-Tax Priority Claims, including 503(b)(9) Claims and Professional Fee Claims.

**_1.5._     _Administrative Claims Objection Deadline_** means the last day for Filing an objection to any Administrative Expense Request, which shall be (a) the later of (i) 180 days after the Effective Date or (ii) 90 days after the filing of such Administrative Claim or (b) such other date specified in this Plan or ordered by the Bankruptcy Court.  The filing of a motion to extend the Administrative Claims Objection Deadline shall automatically extend the Administrative Claims Objection Deadline until a Final Order is entered on such motion.  In the event that such motion to extend the Administrative Claims Objection Deadline is denied by the Bankruptcy Court, the Administrative Claims Objection Deadline shall be the later of the current Administrative Claims Objection Deadline (as previously extended, if applicable) or 30 days after the Bankruptcy Court's entry of an order denying the motion to extend the Administrative Claims Objection Deadline.

**_1.6._     _Administrative Expense Request_** means a request for the payment of an Administrative Claim, which request may be made by filing an application with the Bankruptcy Court pursuant to the applicable sections of the Bankruptcy Code, the Bankruptcy Rules and local bankruptcy rules.

**_1.7._     _Amended Schedule Claimants_** means Entities whose claims have been amended by the Debtor in the Schedules.

**_1.8._     _Allowed Claim_** means a Claim or any portion thereof (a) that has been allowed by a Final Order of the Bankruptcy Court (or such court as the Debtor and/or Reorganized Sky Bridge and the Holder of any such Claim agree may adjudicate such Claim and any objections thereto), (b) that either (x) has been Scheduled as a liquidated, non-contingent, and undisputed Claim in an amount greater than zero on the Schedules, or (y) is the subject of a timely filed proof of claim as to which either (i) no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, withdrawn or overruled, or (c) that is expressly allowed in a liquidated amount in the Plan; provided, however, that with respect to an Administrative Claim or 503(b)(9) Claim, "Allowed Claim" means an Administrative Claim or 503(b)(9) Claim as to which a timely written request for payment has been made in accordance with applicable bar dates for such requests set by the Bankruptcy Court (if such written request is required) in each case as to which the Debtor, or any other party in interest (x) has not interposed a timely objection or (y) has interposed a timely objection and such objection has been settled, waived through payment, withdrawn or overruled; provided further, however, that for purposes of determining the status (i.e., Allowed or Disputed) of a particular Claim prior to the expiration of the period fixed for filing objections to the allowance or disallowance of Claims, any such Claim which has not been previously allowed or disallowed by a Final Order of the Bankruptcy Court or the Plan shall be deemed a Disputed Claim unless such Claim is specifically identified by the Debtor and/or Reorganized Sky Bridge as being an Allowed Claim.

**_1.9._     _Allowed ... Claim_** means an Allowed Claim of the particular type or Class described.

**1.10.** ***Amended Schedule Bar Date*** means the deadline by which Amended Schedule Claimants have to File a Proof of Claim in response to such amendment. An Affected Claimant shall have until the later of (i) the General Bar Date or (ii) 30 days after the date that notice of the applicable amendment, if any, to the Schedules is served on the Affected Claimant in which to File a Proof of Claim or amend any previously Filed Proofs of Claim in respect of the amended Scheduled Claim.

**1.11.** ***Asset Purchase Agreement(s)*** means, individually, an asset purchase agreement pursuant to the Plan governing the sale(s) of any portion of the Property and/or the Miscellaneous Assets, by and among one or more Purchaser(s) and the Debtor or Reorganized Sky Bridge, as such Agreement has been or may be amended by the parties thereto, and collectively, all asset purchase agreements governing the sales of one or more of the Business Units and/or the Miscellaneous Assets.

**1.12.** ***Available Cash*** means all Cash held by Reorganized Sky Bridge as of the date ten (10) Business Days prior to (i) the Initial Distribution Date and/or (ii) any subsequent Distribution Date.

**1.13.** ***Avoidance Actions*** means causes of action arising under Bankruptcy Code sections 502, 510, 541, 542, 544, 545, 547, 548, 549, 550, 551 or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such causes of action.

**1.14.** ***Ballot*** means each of the ballot forms distributed to each Holder of a Claim or Interest entitled to vote to accept or reject this Plan.

**1.15.** ***Balloting Agent*** means counsel to the Debtor.

**1.16.** ***Bankruptcy Code*** means title 11 of the United States Code, as now in effect or hereafter amended and as applicable to the Chapter 11 Case.

**1.17.** ***Bankruptcy Court*** means the United States Bankruptcy Court for the District of Delaware, or any other court with jurisdiction over the Chapter 11 Case.

**1.18.** ***Bankruptcy Rules*** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and as applicable to the Chapter 11 Case on proceedings therein, as the case may be, and the Local Rules, as now in effect or hereafter amended.

**1.19.** ***Business Day*** means any day, other than a Saturday, Sunday or Legal Holiday.

**1.20.** ***Business Units*** means, collectively, those portions of the Debtor's operations and those assets relating to such operations, including the Debtor's operations in Illinois, North Carolina, South Carolina and Pennsylvania.

**1.21.** ***Cash*** means legal tender of the United States of America and equivalents thereof, which may be conveyed by check or wire transfer.

**1.22.** ***Causes of Action*** means any and all claims, actions, proceedings, causes of action, suits, accounts, controversies, agreements, promises, rights of action, rights to legal remedies, rights to equitable remedies, rights to payment and Claims (as defined in Bankruptcy Code section 101(5)), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and

whether asserted or assertable directly or derivatively, in law, equity or otherwise, that the Debtor and/or Estate may hold against any Person, provided, however, that Causes of Action shall not include the Avoidance Actions.

**1.23.** ***Chapter 11 Case*** means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court.

**1.24.** ***Claim*** means a "claim" as defined in Bankruptcy Code section 101(5) or Administrative Expense Request, whether arising before, on, or after the Petition Date.

**1.25.** ***Claimholder*** means the Holder of a Claim.

**1.26.** ***Claims Objection Deadline*** means the last day for Filing objections to Claims, other than 503(b)(9) Claims, Administrative Claims and Professional Fee Claims, which day shall be (a) the later of (i) 270 days after the Effective Date or (ii) 180 days after the Filing of a Proof of Claim for, or request for payment of, such Claim or (b) such other date as the Bankruptcy Court may order. The Filing of a motion to extend the Claims Objection Deadline, with service only upon the Post-Effective Date Service List shall automatically extend the Claims Objection Deadline until a Final Order is entered on such motion. In the event that such motion to extend the Claims Objection Deadline is denied, the Claims Objection Deadline shall be the later of the current Claims Objection Deadline (as previously extended, if applicable) or 30 days after the Bankruptcy Court's entry of an order denying the motion to extend the Claims Objection Deadline.

**1.27.** ***Class*** means a category of Holders of Claims or Interests, as described in Article II hereof.

**1.28.** ***Closing*** means, with respect to each Asset Purchase Agreement, the closing of the transactions contemplated by such Asset Purchase Agreement upon the terms and subject to the satisfaction of the conditions therein.

**1.29.** ***Collateral*** means any property or interest in property of a Debtor'ss Estate subject to a right of setoff or Lien to secure the payment or performance of a Claim, which right of setoff or Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.30.** ***Confirmation*** means entry by the Bankruptcy Court of the Confirmation Order.

**1.31.** ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court docket in the Chapter 11 Case.

**1.32.** ***Confirmation Hearing*** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.33.** ***Confirmation Objection Deadline*** means the last day for Filing objections to confirmation of the Plan, which date shall be _____, 2010 at 4:00 p.m. (Eastern Time).

**1.34.** ***Confirmation Order*** means the order entered by the Bankruptcy Court confirming the Plan under Bankruptcy Code section 1129.

**1.35.** ***Consummation or Consummate*** means the occurrence of or to achieve the Effective Date.

**1.36.    *Contingent*** means, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

**1.37.    *Creditor*** means any Person who holds a Claim against the Debtor.

**1.38.    *Cure*** means the distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption or assumption and assignment of an executory contract or unexpired lease, pursuant to Bankruptcy Code section 365(b), in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

**1.39.    *Debtor*** means Sky Bridge.

**1.40.    *Deficiency Claim(s)*** means an unsecured deficiency Claim of a Holder of a Secured Claim arising as a result of the Debtor's failure or inability to pay in full such Secured Claim under the Plan.

**1.41.    *Disallowed Claim*** means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order, (b) is scheduled at zero or as contingent, disputed or unliquidated and as to which no Proof of Claim has been filed by the applicable bar date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order, or otherwise deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (c) is not Scheduled, and as to which (i) no Proof of Claim has been filed by the applicable bar date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (ii) no Administrative Expense Request has been filed by the Final Administrative Claims Bar Date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law.

**1.42.    *Disclosure Statement*** means the disclosure statement (including all exhibits and schedules thereto) relating to this Plan, distributed in accordance with Bankruptcy Code sections 1125 and 1126(b) and Bankruptcy Rule 3018.

**1.43.    *Disputed Claim*** means a Claim, or any portion thereof, that has not been Allowed pursuant to the Plan or a Final Order, and: (a) if a Claim has been filed, or deemed to have been filed, by the applicable bar date (i) a Claim for which a corresponding Claim has been listed on the Schedules as unliquidated, contingent or disputed; (ii) a Claim for which a corresponding Claim has been listed on the Schedules as other than unliquidated, contingent or disputed, but the amount of such Claim as asserted in the Claim varies from the amount of such Claim as listed in the Schedules; or (iii) a Claim as to which any party in interest has timely filed an objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules and any orders of the Bankruptcy Court, or which is otherwise disputed by a Debtor and/or Reorganized Sky Bridge in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn, or determined by a Final Order; (b) if an Administrative Expense Request has been filed or deemed to have been filed by the Administrative Claims Bar Date, an Administrative Claim as to which any party in interest has timely filed an objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or which is otherwise disputed by a Debtor or Reorganized Sky Bridge in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; (c) for which a claim was required to be filed by order of the

Bankruptcy Court, but as to which a Claim was not timely or properly filed; or (d) that is disputed in accordance with the provisions of this Plan.

**1.44.** ***Disputed Claim Amount*** means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the liquidated amount set forth in the Proof of Claim relating to the Disputed Claim; (ii) an amount agreed to by the Debtor and/or Reorganized Sky Bridge, as applicable, and the holder of such Disputed Claim; or (iii) if a request for estimation is filed by any party, the amount at which such Claim is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by the Debtor and/or Reorganized Sky Bridge, as applicable, and the holder of such Disputed Claim or (ii) the amount estimated by the Bankruptcy Court with respect to such Disputed Claim; or (c) if the Claim was listed on the Schedules as unliquidated, contingent or disputed and no Proof of Claim was filed, or deemed to have been filed, by the applicable Bar Date and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, zero.

**1.45.** ***Distribution*** means any distribution pursuant to the Plan to the Holders of Allowed Claims.

**1.46.** ***Distribution Date*** means the date upon which a Distribution is made by Reorganized Sky Bridge in accordance with the Plan to Holders of Allowed Claims entitled to receive Distributions under the Plan.

**1.47.** ***Distribution Record Date*** means the record date for purposes of making Distributions under the Plan on account of Allowed Claims, which date shall be the Confirmation Date or such other date designated in the Confirmation Order.

**1.48.** ***Effective Date*** means the Business Day this Plan becomes effective as provided in Article VIII.B hereof.

**1.49.** ***Entity*** means a person, estate, trust, governmental unit and United States Trustee, within the meaning of Bankruptcy Code section 101(15).

**1.50.** ***Estate*** means the estate of Sky Bridge under Bankruptcy Code section 541.

**1.51.** ***Exhibit*** means an exhibit annexed to either this Plan or as an appendix to the Disclosure Statement.

**1.52.** ***Exhibit Filing Date*** means the date on which Exhibits to the Plan or the Disclosure Statements shall be filed with the Bankruptcy Court, which date shall be at least five (5) business days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court without further notice to parties-in-interest.

**1.53.** ***Face Amount*** means (a) when used in reference to a Disputed Claim, the Disputed Claim Amount and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

**1.54.** ***Final Administrative Claims Bar Date*** means the last date by which a request for payment of an Administrative Claim, may be Filed, which date is sixty (60) days after the Effective Date.

**1.55.** **_File, Filed or Filing_** means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

**1.56.** **_Final Decree_** means the decree contemplated under Bankruptcy Rule 3022.

**1.57.** **_Final Order_** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Chapter 11 Case, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

**1.58.** **_Final Distribution Date_** means the date of the last Distribution under the Plan for and on account of an Allowed Claim.

**1.59.** **_General Bar Date_** means the bar date for Filing Proofs of Claim for Claims arising prior to the Petition Date against any and/or all of the Debtor in the Chapter 11 Case, other than (i) those Claims expressly excluded from the General Bar Date pursuant to a Final Order of the Bankruptcy Court and (ii) Claims whose Filing deadline is otherwise governed by the Rejection Bar Date or the Amended Schedule Bar Date.

**1.60.** **_General Unsecured Claim_** means a Claim that is not a 503(b)(9) Claim, Administrative Claim, Secured Claim, Priority Claim or Professional Fee Claim, and that is not an Intercompany Claim.

**1.61.** **_Governmental Bar Date_** means the bar date for Governmental Units to file Proofs of Claim for Claims arising prior to the Petition Date against the Debtor.

**1.62.** **_Governmental Unit_** means a "governmental unit" as defined in Bankruptcy Code section 101(27).

**1.63.** **_Holder_** means an entity holding a Claim or Interest.

**1.64.** **_Impaired_** means, when used in reference to a Claim, Interest, or Class, a Claim, Interest, or a Class that is impaired within the meaning of Bankruptcy Code section 1124.

**1.65.** **_Indemnification Obligation_** means any obligation of any of the Debtor to indemnify, reimburse, or provide contribution to any present or former officer, director, or employee, or any present or former Professionals, advisors, or representatives of the Debtor, pursuant to by-laws, articles of incorporation, contract, or otherwise as may be in existence immediately prior to the Petition Date.

**1.66.** **_Initial Distribution Date_** means the Effective Date or as soon thereafter as may be reasonably practicable, but in any event no later than the fourteenth (14th) Business Day following the Effective Date.

**1.67.** **_Insured Claim_** means any Claim or portion of a Claim that is insured under the Debtor's insurance policies, but only to the extent of such coverage.

**1.68.** **_Interest_** means the legal, equitable, contractual, and other rights of any Person with respect to any capital stock or other ownership interest in the Debtor, whether or not transferable,

and any option, warrant or right to purchase, sell, or subscribe for an ownership interest or other equity security in the Debtor.

1.69.    **Internal Revenue Code** means the Internal Revenue Code of 1986, as amended.

1.70.    **IRS** means the Internal Revenue Service.

1.71.    **Lease Claims** means any Claims for payment first arising before the 60th day following the Petition Date that were not required to be timely paid under section 365(d)(5) of the Bankruptcy Code.

1.72.    **Legal Holiday** has the meaning set forth in Bankruptcy Rule 9006(a).

1.73.    **Lien** means any lien, security interest, pledge, title retention agreement, encumbrance, charge, mortgage, or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

1.74.    **Local Rules** means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

1.75.    **MPF** means MP Value Fund 5, LLC, MP Value Fund 7, LLC, MPF DEWAAY Fund 3, LLC, MPF DEWAAY Premier Fund 3, LLC, MPF Flagship Fund 11, LLC, MPF Flagship Fund 9, LLC, and MPF Income Fund 23, LLC.

1.76.    **Net Proceeds** means such amounts collected from the sale or liquidation of assets after payment of all costs and expenses of such sale or liquidation, including, without limitation, attorney fees.

1.77.    **Non-Tax Priority Claim** means a Claim entitled to priority in payment pursuant to Bankruptcy Code section 507(a), other than an Administrative Claim or 503(b)(9) Claim.

1.78.    **Old Equity Interests** means the  Membership Interest in Sky Bridge outstanding immediately prior to the Petition Date, including any agreements of any character to acquire such Interests.

1.79.    **Periodic Class 3 Distribution Amount** means the amount of Cash equal to the aggregate Pro Rata amount of the Class 3 Distribution Amount to which Holders of Allowed General Unsecured Claims are entitled as of an applicable Distribution Date, if any.

1.80.    **Person** has the meaning set forth in Bankruptcy Code section 101(41).

1.81.    **Petition Date** means February 2, 2010, the date on which the Debtor filed its petitions for relief commencing the Chapter 11 Case.

1.82.    **Plan** means this Plan of Reorganization Proposed by the Debtor, all Exhibits to the Plan, referenced in the Plan or included in the Plan Supplement, as the same may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules.

**1.83.** ***Plan Document*** means the Plan, together with any contract, instrument, release, or other agreement or document entered in connection with Plan.

**1.84.** ***Plan Financing*** means the financing committed by and through Pivot Capital in order to consummate the Plan on and after the Effective Date.

**1.85.** ***Plan Proponent*** means Sky Bridge.

**1.86.** ***Plan Supplement*** means the supplement to the Plan containing a non-exclusive list of Causes of Action and Avoidance Actions, and the list of assumed agreements, which the Debtor will file with the Bankruptcy Court at least five (5) business days prior to the Voting Deadline or such later date as may be approved by the Bankruptcy Court without further notice to parties-in-interest.

**1.87.** ***Post-Effective Date Service List*** means the list of persons and entities who file new requests for notices following the Effective Date.

**1.88.** ***Pre-Effective Period*** means the period from the Confirmation Date to the Effective Date.

**1.89.** ***Priority Claims*** means Non-Tax Priority Claims.

**1.90.** ***Professional*** means (a) any professional employed in these Chapter 11 Case pursuant to Bankruptcy Code sections 327, 328, or 1103 or otherwise, and (b) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Bankruptcy Code section 503(b)(4).

**1.91.** ***Professional Fee Claim*** means a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred after the Petition Date and prior to and including the Effective Date.

**1.92.** ***Proof of Claim*** means a proof of claim, including, but not limited to, any Administrative Expense Request, filed with the Bankruptcy Court in connection with the Chapter 11 Case pursuant to section 501 of the Bankruptcy Code.

**1.93.** ***Pro Rata*** means, at any time, the proportion that the Face Amount of an Allowed Claim in a particular Class bears to the aggregate Face Amount of all Allowed Claims in such Class, unless the Plan provides otherwise.

**1.94.** ***Reclamation Claim*** means each Claim to the extent asserted against the Debtor pursuant to Bankruptcy Code section 546(c).

**1.95.** ***Reinstated or Reinstatement*** means (i) leaving unaltered the legal, equitable, and contractual rights to which a Claim or Interest entitles the Claimholder or Interest Holder so as to leave such Claim or Interest unimpaired in accordance with Bankruptcy Code section 1124 or (ii) notwithstanding any contractual provision or applicable law that entitles the Claimholder or Interest Holder to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default (a) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in Bankruptcy Code section 365(b)(2); (b) reinstating the maturity of such Claim or Interest as such maturity existed before such default; (c) compensating the Claimholder or Interest Holder for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; and (d) not otherwise altering the legal, equitable, or contractual rights

to which such Claim or Interest entitles the Claimholder or Interest Holder; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim or Interest is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence prohibiting certain transactions or actions contemplated by the Plan, or conditioning such transactions or actions on certain factors, shall not be required to be Reinstated in order to accomplish Reinstatement.

**1.96.** ***Rejection Bar Date*** means the deadline by which any Entity whose Claims arise out of the rejection of an executory contract or unexpired lease (pursuant to Bankruptcy Code section 365) after the Petition Date, must File a Proof of Claim, which deadline shall be the later of (i) thirty (30) days after the effective date of rejection as provided by an order of the Court, pursuant to Bankruptcy Code section 365, authorizing the rejection of such contract or lease, (ii) any date set by order of the Court or (iii) the General Bar Date.

**1.97.** ***Related Parties*** means officers, employees, directors, assigns, agents and professionals.

**1.98.** ***Released Claims*** means the claims or Causes of Action described in Article X.C of the Plan.

**1.99.** ***Reorganized Sky Bridge*** means the Sky Bridge Resorts Community LLC as newly re-constituted on the Effective Date pursuant to the Plan.

**1.100.** ***Sale(s)*** means, individually, the sale of the Debtor's assets to one or more Purchaser(s), and collectively, the sale of substantially all of the Debtor's assets to the Purchaser as approved by the Bankruptcy Court pursuant to the Sale Order.

**1.101.** ***Scheduled*** means, with respect to any Claim, the status, priority and amount, if any, of such Claim as set forth in the Schedules.

**1.102.** ***Schedules*** means the schedules of assets and liabilities, the list of Holders of Interests, and the statements of financial affairs filed by the Debtor pursuant to Bankruptcy Code section 521 and the Bankruptcy Rules, as such schedules have been or may be further modified, amended or supplemented in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

**1.103.** ***Sky Bridge*** means Sky Bridge Resorts Community, L.L.C.

**1.104.** ***Secured Claim*** means a Claim that is secured by a Lien which is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, on property in which an Estate has an interest, or a Claim that is subject to setoff under section 553 of the Bankruptcy Code; to the extent of the value of the Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable; as determined by a Final Order pursuant to section 506(a) of the Bankruptcy Code, or in the case of setoff, pursuant to section 553 of the Bankruptcy Code, or in either case as otherwise agreed upon in writing by the Debtor or Reorganized Sky Bridge and the Holder of such Claim. The amount of any Claim that exceeds the value of the Holder's interest in the Estate's interest in property or the amount subject to setoff shall be treated as a General Unsecured Claim.

**1.105.** ***Security*** shall have the meaning ascribed to it in Bankruptcy Code section 101(49).

**1.106.** ***Solicitation*** means the solicitation by the Plan Proponent of acceptances of the Plan.

**1.107.** ***Membership Interest*** means the membership interests held in Sky Bridge as of the Petition Date.

**1.108.** ***Substantial Contribution Claim*** means a Claim under Bankruptcy Code subsections 503(b)(3), (b)(4), or (b)(5) for compensation or reimbursement of expenses incurred in making a substantial contribution in the Chapter 11 Case.

**1.109.** ***Tax Claim*** means all or that portion of a Claim held by a Governmental Unit for a tax assessed or assessable against the Debtor, including income and employment taxes and any related penalties or interest.

**1.110.** ***Taxes*** means any and all taxes, levies, imposts, assessments, or other charges of whatever nature imposed at any time by any Governmental Unit or by any political subdivision or taxing authority thereof or therein and all interest, penalties, or similar liabilities with respect thereto.

**1.111.** ***Third Party Claims*** are non-estate causes of action arising from any matter involving the Debtor. Third Party Claims include, without limitation, causes of action against: (1) former officers, directors or employees of the Debtor; (2) all persons or entities that conducted transactions with the Debtor; and (3) all persons or entities that provided services to the Debtor.

**1.112.** ***Trustee Fees*** means all fees payable pursuant to 28 U.S.C. § 1930.

**1.113.** ***Trustee Fee Claim*** means a Claim of the Office of the United States Trustee for the payment of Trustee Fees.

**1.114.** ***Unclaimed Distribution Reserve*** means the reserve established pursuant to Article VI.C.2 of the Plan.

**1.115.** ***Unclassified Claims*** means 503(b)(9) Claims and Administrative Claims.

**1.116.** ***Unencumbered Assets*** means the assets of the Debtor's Estate not subject to the Liens, security interests and encumbrances of the Secured Lenders.

**1.117.** ***Unimpaired with respect to a Claim, Class, or Interest*** means a Claim, Class, or Interest that is not impaired within the meaning of Bankruptcy Code section 1124.

**1.118.** ***Unsecured Claim*** means a Claim arising prior to the Petition Date against any of the Debtor that is neither a Secured Claim nor entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court, which Claim may be a General Unsecured Claim or an Intercompany Claim.

**1.119.** ***U.S. Trustee*** means the Office of the United States Trustee for the District of Delaware.

**1.120.** ***Voting Deadline*** means the date and time, as fixed by an order of the Bankruptcy Court and set forth in the Disclosure Statement, by which all Ballots to accept or reject the Plan must be received in order to be counted.

**_1.121. Voting Record Date_** means the date of entry of any order approving the Disclosure Statement.

### C.    *Rules of Interpretation*

For purposes of the Plan (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in the Plan to sections, articles, Schedules and Exhibits are references to sections, articles, Schedules and Exhibits of or to the Plan, (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (f) to the extent not modified herein, the rules of construction set forth in Bankruptcy Code section 102 and in the Bankruptcy Rules shall apply.

### D.    *Computation of Time*

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### E.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of (i) the State of Delaware shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan and (ii) the laws of the state of incorporation of each Debtor shall govern corporate governance matters with respect to such Debtor, in either case without giving effect to the principles of conflicts of law thereof.

### F.    *Exhibits*

All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits shall be filed in one or more Plan Supplements with the Bankruptcy Court on or before the Exhibit Filing Date.  After the Exhibit Filing Date, copies of Exhibits can be obtained upon written request to Womble, Carlyle, Sandridge & Rice PLLC or by downloading such Exhibits from the Bankruptcy Court's website at www.deb.uscourts.gov (registration required).  To the extent any Exhibit is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-Exhibit portion of the Plan shall control.

## II.    CLASSIFICATION OF CLAIMS AND INTERESTS

### A.    *Introduction*

All Claims and Interests, except 503(b)(9) Claims and Administrative Claims are placed in the Classes set forth below.  In accordance with Bankruptcy Code section 1123(a)(1), 503(b)(9) Claims and Administrative Claims, as described below, have not been classified.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

**B.**     ***Unsolicited and Unclassified Claims (not entitled to vote on the Plan)***

           1.     503(b)(9) Claims

           2.     Administrative Claims

**C.**     ***Impaired Voting Claims and Unimpaired Non-Voting Claims*** (Classes 1 and 3 are entitled to vote on the Plan)

           1.     Class 1A - MPF Secured Claim (impaired and entitled to vote)

           2.     Class 1B – Metropolitan National Bank Secured Claim (impaired and entitled to vote)

           3.     Class 1C – Other Mortgagee Secured Claims (impaired and entitled to vote)

           4.     Class 1D – Other Secured Claims (impaired and entitled to vote)

           5.     Class 2 - Unsecured Priority Claims (impaired and entitled to vote)

           6.     Class 3 – Allowed General Unsecured Claims (impaired and entitled to vote)

**D.**     ***Impaired Non-Voting Interests*** (deemed to have rejected the Plan and, therefore, not entitled to vote on the Plan)

           Class 4 – Membership Interest (impaired/extinguished and deemed to reject)

## III.     TREATMENT OF CLAIMS AND INTERESTS

**A.**     ***Unclassified Claims***

           1.     503(b)(9) Claims

Except as otherwise provided herein, and subject to the requirements of this Plan, on, or as soon as reasonably practicable after the later of (i) the Initial Distribution Date or (ii) the Distribution Date immediately following the date on which a 503(b)(9) Claim becomes an Allowed 503(b)(9) Claim, the Holder of such Allowed 503(b)(9) Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed 503(b)(9) Claim, (a) Cash equal to the unpaid portion of the Face Amount of such Allowed 503(b)(9) Claim or (b) such other less favorable treatment as to which such Holder and the Debtor and/or Reorganized Sky Bridge shall have agreed upon in writing.

2. Administrative Claims

Except as otherwise provided herein, and subject to the requirements of this Plan, on, or as soon as reasonably practicable after the later of (i) the Initial Distribution Date or (ii) the Distribution Date immediately following the date on which an Administrative Claim becomes an Allowed Administrative Claim, the Holder of such Allowed Administrative Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of the Face Amount of such Allowed Administrative Claim or (b) such other less favorable treatment as to which such Holder and the Debtor and/or Reorganized Sky Bridge shall have agreed upon in writing; provided, however, that the failure of any Holder of an Administrative Claim to file an objection to confirmation of the Plan by the Confirmation Objection Deadline shall be deemed to constitute such Holder's consent to receive less favorable treatment under Bankruptcy Code section 1129(a)(9) with respect to such Claim, including consent to partial Pro Rata payment of such Claim in the event such Claim is determined to be an Allowed Claim and insufficient funds exist to fund full payment of all Allowed Administrative Claims; provided further, however, that Allowed Administrative Claims with respect to liabilities incurred by a Debtor in the ordinary course of business during the Chapter 11 Case may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto (x) prior to the Effective Date, by the Debtor and/or the Purchaser(s) (as required by the terms of an applicable Asset Purchase Agreement), and (y) subsequent to the Effective Date, by Reorganized Sky Bridge and/or the Purchaser(s) (as required by the terms of an applicable Asset Purchase Agreement).

## B. *Impaired Voting Claims and Unimpaired Non-Voting Claims*

1. Class 1A - MPF Secured Claim (impaired and entitled to vote)

MPF hall receive $2.6 million in full satisfaction of its secured claim, on the Effective Date. MPF shall agree to waive its deficiency claim or in the exercise of the Debtor's discretion, may be subject to a proceeding to determine the value of its interest in the Property.

2. Class 1B – Metropolitan National Bank Secured Claim (impaired and entitled to vote)

The Debtor and/or Reorganized Sky Bridge shall offer to Bondholders the option of cash payment of 50% of the full face amount of the bonds by any tendering Holder by a date certain, less tax payments made from August 1, 2010 up to the time of tender. The Plan Supplement will contain the terms of such offer. Remaining holders shall be entitled under the Indenture to share pro rata in annual payments as required under the Indenture according to its original terms.

3. Class 1C – Other Mortgagee Secured Claims (impaired and entitled to vote)

The Holder(s) of Allowed Class 1 C Claims shall receive $500,000 in full satisfaction of their secured claim, on or before funding of the assisted living facility. Said holders shall also be deemed to waive any deficiency and any other claim upon receipt of such distribution.

4. Class 1D – Other Secured Claims

Any Holder(s) of Allowed Class 1D Claims shall receive, upon becoming an Allowed Secured Claim, annual payments commencing on the Effective Date and amortized over five years representing the value of the creditor's interest in the collateral plus interest under applicable law at a non-default rate.

5.      Class 2 - Unsecured Priority Claims (impaired and entitled to vote)

Except to the extent that an Allowed Non-Tax Priority Claim has been paid prior to the Initial Distribution Date, a Holder of an Allowed Non-Tax Priority Claim shall be entitled to receive from Reorganized Sky Bridge, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Non-Tax Priority Claim, as applicable, (i) deferred Cash payments in an aggregate principal amount equal to the Face Amount of such Allowed Non-Tax Priority Claim, (ii) Cash equal to the unpaid portion of the Face Amount of such Allowed Non-Tax Priority Claim or (iii) such other less favorable treatment as to which such Holder and Reorganized Sky Bridge shall have agreed upon in writing.  If deferred Cash payments are made to a Holder of an Allowed Non-Tax Priority Claim, payments shall be made on the third (3rd) anniversary of the Confirmation Date, or as soon thereafter as is practicable; provided, however, that Reorganized Sky Bridge shall have the right to accelerate payment of any Allowed Non-Tax Priority Claim, or any portion or remaining balance of any Allowed Non-Tax Priority Claim, at any time on or after the Effective Date without premium or penalty.

6.      Class 3: General Unsecured Claims

On, or as soon as reasonably practicable after, the later of (i) the Initial Distribution Date, or (ii) the Distribution Date immediately following the date a General Unsecured Claim becomes an Allowed General Unsecured Claim, the Holder of such Allowed General Unsecured Claim shall, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed General Unsecured Claim, receive from Reorganized Sky Bridge, its Pro Rata share of a fund in the total amount of $1,107,749 provided from the Plan Financing on or before funding of the Assisted Living Facility.

## C.      *Impaired Non-Voting Interests*

1.      Class 4: Intercompany Claims

On the Effective Date all Interests shall be extinguished.

## D.      *Special Provision Regarding Unimpaired Claims*

Except as otherwise provided in the Plan, the Confirmation Order, any other order of the Court, or any document or agreement enforceable pursuant to the terms of the Plan, nothing shall affect the rights and defenses, both legal and equitable, of Reorganized Sky Bridge with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

## E.      *Allowed Claims*

Notwithstanding any provision herein to the contrary, Reorganized Sky Bridge shall only make Distributions to Holders of Allowed Claims.  No Holder of a Disputed Claim shall receive any Distribution on account thereof until (and then only to the extent that) its Disputed Claim becomes an Allowed Claim.  Reorganized Sky Bridge may, in his or her discretion, withhold Distributions otherwise due hereunder to any Claimholder until the Claims Objection Deadline, to enable a timely objection thereto to be filed.  Any Holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its Distribution in accordance with the terms and provisions of this Plan.

*F.*     *Special Provisions Regarding Insured Claims*

Distributions under the Plan to each Holder of an Insured Claim shall be in accordance with the treatment provided under the Plan for the Class in which such Insured Claim is classified; provided, however, that the maximum amount of any Distribution under the Plan on account of an Allowed Insured Claim shall be limited to an amount equal to: (a) the applicable deductible or self-insured retention under the relevant insurance policy minus (b) any reimbursement obligations of the Debtor to the insurance carrier for sums expended by the insurance carrier on account of such Claim (including defense costs); provided further, however, that, to the extent that a Claimholder has an Allowed Insured Claim, the amount of which exceeds the total coverage available from the relevant insurance policies of the Debtor, such Claimholder shall have an Allowed General Unsecured Claim in the amount by which such Allowed Insured Claim exceeds the coverage available from the relevant Debtor's insurance policies.  Nothing in this section shall constitute a waiver of any Cause of Action the Debtor may hold against any Person, including the Debtor's insurance carriers, or is intended to, shall, or shall be deemed to preclude any Holder of an Allowed Insured Claim from seeking and/or obtaining a distribution or other recovery from any insurer of the Debtor in addition to any Distribution such Holder may receive under the Plan; provided further, however, that the Debtor do not waive, and expressly reserve its rights to assert that any insurance coverage is property of the Estate to which they are entitled.  The Plan shall not expand the scope of, or alter in any way, the obligations of the Debtor's insurers under its policies, and the Debtor's insurers shall retain any and all defenses to coverage that such insurers may have.  The Plan shall not operate as a waiver of any other Claims the Debtor's insurers have asserted or may assert in any Proof of Claim or the Debtor's rights and defenses with respect to such Proofs of Claim.

## IV.     ACCEPTANCE OR REJECTION OF THE PLAN

*A.*     *Impaired Classes of Claims Entitled to Vote*

Subject to Article III of the Plan, only Holders of Impaired Claims are entitled to vote to accept or reject the Plan.

*B.*     *Acceptance by an Impaired Class*

In accordance with Bankruptcy Code section 1126(c) and except as provided in Bankruptcy Code section 1126(e), an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

*C.*     *Presumed Acceptances by Unimpaired Classes*

Class 2 is Unimpaired by the Plan.  Under Bankruptcy Code section 1126(f), such Claimholders are conclusively presumed to accept the Plan, and the votes of such Claimholders will not be solicited.

*D.*     *Classes Deemed to Reject Plan*

Holders of Claims in Class 4 and Interest Holders in Class 5 are not entitled to receive or retain any property under the Plan.  Under Bankruptcy Code section 1126(g), Holders of Claims in Class 4 and Holders of Interests in Class 5 are deemed to reject the Plan, and the votes of such Claimholders or Interest Holders will not be solicited.

***E.***       ***Summary of Classes Voting on the Plan***

      As a result of the provisions of Articles II and III of this Plan, the votes of Holders of Claims in Classes 1 and 3 will be solicited with respect to the Plan.

## V.    MEANS FOR IMPLEMENTATION OF THE PLAN

***A.***    ***Plan Financing***

      The financing of the funds required on the Effective Date and following the Effective Date shall be obtained from the Plan Financing, consisting of a financing commitment of approximately $6.5 million obtained pursuant to a financing commitment secured by a pledge of a €100 million UBS Bank guarantee through a joint venture involving Pivot Capital, EON Oil Ltd., and several additional parties. The Debtor and the Reorganized Sky Bridge also reserve the right in their sole discretion to generate funding for the Plan through any other form of financing, and/or through one or more Sales of portions of the Property.

***B.***    ***Corporate Action***

      1.       Transfer to and Vesting of Assets in Reorganized Sky Bridge

      Upon the Effective Date, any and all remaining assets of the Debtor and its Estate, including (a) the Property, (b) any Unencumbered Assets, (c) all Causes of Action, (d) Avoidance Actions and (e) all Cash, shall be transferred to, and vest in, Reorganized Sky Bridge, free and clear of any and all claims, liens, interests and encumbrances, subject only to any Lien that is not waived, released or discharged on the Effective Date of the Plan. .

      2.       Post-Effective Date Professional Fees, Final Fee Applications

      The Professionals employed by the Debtor and Reorganized Sky Bridge shall be entitled to reasonable compensation and reimbursement of actual, necessary expenses for post-Effective Date activities, including the preparation, filing, and prosecution of final fee applications, upon the submission of invoices to Reorganized Sky Bridge. Any time or expenses incurred in the preparation, filing, and prosecution of final fee applications shall be disclosed by each Professional in its final fee application and shall be subject to approval of the Bankruptcy Court.

      3.       Legal Representation of the Debtor After the Effective Date

      Upon the Effective Date, Reorganized Sky Bridge shall be the sole successor to the attorney-client privilege formerly held by the Debtor and the Debtor in Possession. Accordingly, to the extent that documents are requested from current counsel to the Debtor by any Person, after the Effective Date, Reorganized Sky Bridge shall have the exclusive right to assert and/or waive such attorney-client privilege or other doctrines preventing disclosure.

      4.       No Further Action

      Each of the matters provided for under the Plan involving the corporate or limited liability company structure of the Debtor or corporate or limited liability company action to be taken by or required of the Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by any Person, including but not limited to, Holders of Claims or Interests against or in the Debtor.

<ol start="5">
<li style="list-style: none;">

5.        Effectuating Documents; Further Transactions
</li>
</ol>

Reorganized Sky Bridge shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**C.**       *Sources for Plan Distribution*

All Cash necessary for Reorganized Sky Bridge to make payments of Cash pursuant to the Plan shall be obtained from the following sources: (a) the Debtor's Cash on hand, subject to release of any existing Liens thereon, (b) the Plan Financing, (c) Cash received from liquidation of the Unencumbered Assets, and/or (d) additional financing.

**D.**       *Powers and Duties of Reorganized Sky Bridge*

Until the closure of the Chapter 11 Case, Reorganized Sky Bridge shall have all the rights and powers of a debtor-in-possession under Bankruptcy Code sections 1107 and 1108. Reorganized Sky Bridge shall be authorized, empowered and directed to take all actions necessary to comply with the Plan and exercise and fulfill the duties and obligations arising thereunder, including, without limitation, to:

(i)       Employ, retain, and replace one or more attorneys, accountants, auctioneers, brokers, managers, consultants, other professionals, agents, investigators, expert witnesses, consultants, and advisors as necessary to discharge the duties of Reorganized Sky Bridge under the Plan;

(ii)       Object to the allowance of Claims pursuant to the terms of the Plan;

(iii)       Open, maintain and administer bank accounts as necessary to discharge the duties of Reorganized Sky Bridge under the Plan;

(iv)       Pay reasonable and necessary professional fees, costs, and expenses as set forth in the Plan;

(v)       Except to the extent waived, released and discharged under Article X of the Plan, or any other order previously entered by the Bankruptcy Court, investigate, analyze, commence, prosecute, litigate, compromise, and otherwise administer the Causes of Action and the Avoidance Actions, as set forth in the Plan , and take all other necessary and appropriate steps to collect, recover, settle, liquidate, or otherwise reduce to Cash the Causes of Action and the Avoidance Actions, and to negotiate and effect settlements with respect to all related Claims.

(vi)       Seek relief from and appear before the Bankruptcy Court and other courts of competent jurisdiction with respect to matters concerning Reorganized Sky Bridge;

(vii)       Seek the examination of any Entity under and subject to the provisions of Bankruptcy Rule 2004;

(viii)    Comply with applicable orders of the Bankruptcy Court and any other court of competent jurisdiction over the matters set forth herein;

(ix)    Comply with all applicable laws and regulations concerning the matters set forth herein;

(x)    Exercise such other powers as may be vested in Reorganized Sky Bridge pursuant to the Plan, or any Orders of the Bankruptcy Court; and

(xi)    Execute any documents, instruments, contracts, and agreements necessary and appropriate to carry out the powers and duties of Reorganized Sky Bridge.

(b)    Fees and Expenses

Except as otherwise provided in the Plan, compensation of Reorganized Sky Bridge and the costs and expenses of Reorganized Sky Bridge (including, without limitation, professional fees and expenses) shall be paid to the extent related to the administration or liquidation of the Unencumbered Assets, from the Net Proceeds of the Unencumbered Assets. The reasonable fees and expenses of Reorganized Sky Bridge Professionals shall be paid as necessary to discharge Reorganized Sky Bridge's duties under the Plan. In the event of a dispute with respect to the fees and expenses of Reorganized Sky Bridge's Professionals, the undisputed portion of such fees and expenses may be paid pending the resolution of the disputed portion of such fees and expenses, which payment shall not require an order of the Bankruptcy Court approving such payment.

(c)    Retention of Professionals and Compensation Procedure

On and after the Effective Date, Reorganized Sky Bridge may engage such professionals and experts as may be deemed necessary and appropriate by Reorganized Sky Bridge to assist Reorganized Sky Bridge in carrying out the provisions of the Plan. For services performed from and after the Effective Date, Professionals shall receive compensation and reimbursement of expenses in a manner to be determined by Reorganized Sky Bridge. It is expected that Reorganized Sky Bridge will engage Womble, Carlyle, Sandridge & Rice PLLC.

(d)    Claims Resolution and Compromise

As of the Effective Date, Reorganized Sky Bridge is authorized to approve compromises of all Administrative Claims, 503(b)(9) Claims, Priority Claims, Claims, Disputed Claims, and Liens pursuant to Bankruptcy Rule 9019(b), the Plan, and to execute necessary documents, including Lien releases (subject to the written consent of the party having such Lien) and stipulations of settlement or release, without further order of the Bankruptcy Court, but subject to the notice provisions herein.

(e)    Vesting of Assets

On the Effective Date, and subject to the applicable provisions of the Plan, all property treated by the Plan, any minutes, and general corporate records of the Debtor, and any books and records relating to the foregoing not otherwise treated by the Plan, shall vest in Reorganized Sky Bridge free and clear of all Liens, Claims, encumbrances, and other interests.

**E.      Accounts**

Reorganized Sky Bridge shall (a) establish one or more general accounts into which shall be deposited all funds and (b) create, fund, and withdraw funds from, such other accounts maintained or established by Reorganized Sky Bridge.

**F.      Release of Liens**

Except as otherwise provided in the Plan, the Confirmation Order, or in any document, instrument, or other agreement created in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, liens, or other security interests against the property of the Estate shall be released.

**G.      Exemption from Certain Transfer Taxes**

Pursuant to Bankruptcy Code section 1146(a), any transfers from the Debtor or Reorganized Sky Bridge to any other Person pursuant to the Plan in the United States within 2 years of the Effective Date shall not be subject to any stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**H.      Preservation and Settlement of Causes of Action and Avoidance Actions**

1.      Preservation of Causes of Action and Avoidance Actions

In accordance with Bankruptcy Code section 1123(b)(3), all of the Causes of Action and Avoidance Actions are expressly  preserved retained and shall be transferred to and vested in Reorganized Sky Bridge, except as expressly  released by the Plan or the Confirmation Order, a nonexclusive list will be set forth in the Plan Supplement, and other similar claims arising under applicable state laws or the Bankruptcy Code.   Reorganized Sky Bridge may in its sole discretion enforce, sue upon, settle or compromise (or decline to do any of the foregoing) any or all of the Causes of Action and Avoidance Actions.

The Plan Proponent has not conducted an investigation into the Causes of Action or Avoidance Actions.   Accordingly, in considering the Plan, each party in interest should understand that any and all Causes of Action and Avoidance Actions that may exist against such Entity may be pursued by Reorganized Sky Bridge, regardless of whether, or the manner in which, such Causes of Action or Avoidance Actions are listed on <u>Exhibit A</u> to this Plan or described herein.   The failure of the Plan Proponent to list a claim, right, cause of action, suit or proceeding on <u>Exhibit A</u> shall not constitute a waiver or release by the Plan Proponents, the Debtor or its Estate of such claim, right of action, suit or proceeding.  Such Causes of Action and Avoidance Actions shall survive entry of the Confirmation Order for the benefit of the Debtor and Reorganized Sky Bridge.

2.      Settlement of Causes of Action and Avoidance Actions

At any time after the Confirmation Date but before the Effective Date, notwithstanding anything in the Plan to the contrary, the Debtor may settle some or all of the Causes of Action and Avoidance Actions pursuant to Bankruptcy Rule 9019 with the approval of the Court.   After the Effective Date, Reorganized Sky Bridge, in accordance with the terms of the Plan, will determine whether to bring, settle, release, compromise, enforce or abandon such rights (or decline to do any of the foregoing) in accordance with the procedures and notice provisions set forth in the Plan.

3.    Plan Supplement

The Debtor will file the Plan Supplement with the Clerk of the Bankruptcy Court at least five (5) business days prior to the Voting Deadline or by such later date as may be established by order of the Bankruptcy Court.  Upon such filing, all documents included in the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal business hours.  Holders of Claims or Interests may obtain a copy of any document included in the Plan Supplement upon written request to the Debtor in accordance with the Plan.

The Plan Supplement will include a non-exclusive list of Causes of Action and Avoidance Actions, and the list of assumed agreements, if any.

### I.    *Effectuating Documents; Further Transactions*

Reorganized Sky Bridge shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan that are not inconsistent with the other terms and conditions of the Plan.

## VI.    PROVISIONS GOVERNING DISTRIBUTIONS

### A.    *Distributions for Claims Allowed as of the Effective Date*

Except as otherwise provided in this Plan,  or as ordered by the Bankruptcy Court, all Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Initial Distribution Date by Reorganized Sky Bridge; provided, however, that the applicable Distribution Date(s) for any Distributions to be made on account of Administrative Claims that are Allowed Claims as of the Effective Date shall be contingent upon the current availability of funds for the payment of such Distributions.  Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made pursuant to the terms and conditions of this Plan, and on such day as selected by Reorganized Sky Bridge, in his or her sole discretion.  Notwithstanding any other provision of the Plan to the contrary, no Distribution shall be made on account of any Allowed Claim or portion thereof that (i) has been satisfied after the Petition Date pursuant to an order of the Bankruptcy Court; (ii) is listed in the schedules as contingent, unliquidated, disputed or in a zero amount, and for which a Proof of Claim has not been timely filed; or (iii) is evidenced by a Proof of Claim that has been amended by a subsequently filed Proof of Claim that purports to amend the prior Proof of Claim.

### B.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.    Delivery of Distributions in General

Distributions to Holders of Allowed Claims shall be made by Reorganized Sky Bridge (a) at the addresses set forth on the Proofs of Claim filed by such Holders (or at the last known addresses of such Holders if no Proof of Claim is filed or if the Debtor have been notified of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to Reorganized Sky Bridge after the date of any related Proof of Claim, (c) at the addresses reflected in the Schedules if no Proof of Claim has been filed and Reorganized Sky Bridge has not received a written notice of a change of address, (d) at the addresses set forth in the other records of the Debtor or Reorganized Sky Bridge at the time of the Distribution or (e) in the case of the Holder of a Claim that is governed by an agreement and is

administered by an agent or servicer, at the addresses contained in the official records of such agent or servicer. Distributions shall be made in accordance with the terms of this Plan. In making Distributions under the Plan, Reorganized Sky Bridge may rely upon the accuracy of the claims register maintained by the Claims Agent in the Chapter 11 Case, as modified by any Final Order of the Bankruptcy Court disallowing Claims in whole or in part.

2.        Undeliverable and Unclaimed Distributions

If the Distribution to any Holder of an Allowed Claim is returned to Reorganized Sky Bridge as undeliverable or is otherwise unclaimed, no further Distributions shall be made to such Holder unless and until Reorganized Sky Bridge is notified in writing of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder without interest. Amounts in respect of undeliverable Distributions made by Reorganized Sky Bridge shall be returned to Reorganized Sky Bridge until such Distributions are claimed. Reorganized Sky Bridge shall segregate and, with respect to Cash, deposit in a segregated account (the "Unclaimed Distribution Reserve") undeliverable and unclaimed Distributions for the benefit of all such similarly situated Persons or Governmental Units until such time as a Distribution becomes deliverable or is claimed.

Any Holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an undeliverable or unclaimed Distribution within six (6) months after the last Distribution Date shall be deemed to have forfeited its Claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such Claim for an undeliverable or unclaimed Distribution against the Debtor and its Estate, Reorganized Sky Bridge, and its respective agents, attorneys, representatives, employees or independent contractors, and/or any of its and their property. In such cases, any Cash otherwise reserved for undeliverable or unclaimed Distributions shall become the property of Reorganized Sky Bridge free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary and shall be distributed in accordance with the terms of this Plan. Nothing contained in this Plan shall require the Debtor or Reorganized Sky Bridge to attempt to locate any Holder of an Allowed Claim.

## C.    *Prepayment*

Except as otherwise provided in this Plan or the Confirmation Order, Reorganized Sky Bridge, as the case may be, shall have the right to prepay, without penalty, all or any portion of an Allowed 503(b)(9) Claim, Allowed Administrative Claim, or Allowed Non-Tax Priority Claim.

## D.    *Means of Cash Payment*

Cash payments made pursuant to this Plan shall be in U.S. dollars and shall be made at the option and in the sole discretion of Reorganized Sky Bridge by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by Reorganized Sky Bridge. In the case of foreign creditors, Cash payments may be made, at the option of Reorganized Sky Bridge, in such funds and by such means as are necessary or customary in a particular jurisdiction.

## E.    *Interest on Claims*

Unless otherwise specifically provided for in a Final Order, including the Confirmation Order, or the Plan, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on any Claims, and no Claimholder shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the

Petition Date to the date a final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

**F.      Withholding and Reporting Requirements**

In accordance with Bankruptcy Code section 346 and in connection with the Plan and all Distributions thereunder, Reorganized Sky Bridge shall, to the extent applicable, comply with all withholding and reporting requirements imposed by any U.S. federal, state, local, or non-U.S. taxing authority.  Reorganized Sky Bridge shall be authorized to take any and all actions necessary and appropriate to comply with such requirements.

All Distributions hereunder may be subject to the withholding and reporting requirements, which are in part described in Section IX.C. of the Disclosure Statement.  As a condition of making any Distribution under the Plan, Reorganized Sky Bridge may require the Holder of an Allowed Claim to provide such Holder's taxpayer identification number, and such other information, certification, or forms as necessary to comply with applicable tax reporting and withholding laws.  Notwithstanding any other provision of this Plan, each Entity receiving a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of tax obligations on account of any such Distribution.

**G.      Setoffs**

1.      By the Debtor or Reorganized Sky Bridge

The Debtor and/or Reorganized Sky Bridge may, pursuant to Bankruptcy Code section 553, 558 or any other applicable law, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, Claims of any nature whatsoever that the Debtor may have against the Holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor Reorganized Sky Bridge, as the case may be, of any such Claim that the Debtor may have against such Holder.

2.      By Non-Debtor

Unless otherwise authorized by a Final Order, any Holder of a Claim must assert any setoff rights against a Claim by a Debtor against such Entity by timely filing (i) a Proof of Claim asserting such right of setoff, (ii) an appropriate motion on or before the Confirmation Date seeking authority to setoff, or (iii) an objection to Confirmation on or before the Confirmation Objection Deadline asserting, preserving or otherwise referencing the existence of such right of setoff, or will be deemed to have waived and be forever barred from asserting any right to setoff against a Claim by a Debtor; provided, however, that the right of the Debtor or Reorganized Sky Bridge, as applicable, to object to the validity of any asserted right of setoff shall be preserved.

**H.      Procedure for Treating and Resolving Disputed, Contingent and/or Unliquidated Claims**

1.      Objection Deadline; Prosecution of Objections

All objections to Claims must be filed and served on the Holders of such Claims by the Claims Objection Deadline, as the same may be extended by the Bankruptcy Court.  If an objection has not been filed to a Claim or the Schedules have not been amended with respect to a Claim that (i) was Scheduled by the Debtor but (ii) was not Scheduled as contingent, unliquidated, and/or disputed, by the Claims

Objection Deadline, as the same may be extended by order of the Bankruptcy Court, the Claim to which the Proof of Claim or Scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier. Notice of any motion for an order extending the Claims Objection Deadline shall be required to be given only to those Entities that have requested notice in the Chapter 11 Case, or to such Entities as the Bankruptcy Court shall order. From the Confirmation Date through the Claims Objection Deadline, any party in interest, including Reorganized Sky Bridge, may file objections, settle, compromise, withdraw, or litigate to judgment objections to Claims. From and after the Effective Date, Reorganized Sky Bridge may settle or compromise any Disputed Claim without approval of the Bankruptcy Court but otherwise subject to the terms of this Plan. Nothing contained herein, however, shall limit the right of Reorganized Sky Bridge to object to Claims, if any, filed or amended after the Effective Date.

### 2. No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim. To the extent that a Claim is not a Disputed Claim but is held by a Holder that is or may be liable to the Debtor, Reorganized Sky Bridge, on account of a Cause of Action, no payments or Distributions shall be made with respect to all or any portion of such Claim unless and until such Claim and liability have been settled or withdrawn or have been determined by Final Order of the Bankruptcy Court or such other court having jurisdiction over the matter.

On each Distribution Date, Reorganized Sky Bridge will make Distributions (a) on account of any Disputed Claim that has become an Allowed Claim since the preceding Distribution Date and (b) on account of previously Allowed Claims of property that would have been distributed to such Claimholders on the dates Distributions previously were made to Holders of Allowed Claims had the Disputed Claims that have become Allowed Claims been Allowed on such dates. Such Distributions will be made pursuant to the provisions of the Plan governing the applicable Class.

### 3. Distributions After Allowance

Payments and Distributions to each Claimholder on account of a Disputed Claim, to the extent that it ultimately becomes an Allowed Claim, will be made in accordance with provisions of the Plan that govern Distributions to such Claimholders. On the first Distribution Date following the date when a Disputed Claim becomes an undisputed, noncontingent, and liquidated Claim, Reorganized Sky Bridge will distribute to the Claimholder any Cash that would have been distributed on the dates Distributions were previously made to Claimholders had such Allowed Claim been an Allowed Claim on such dates. After a Final Order has been entered, or other final resolution has been reached with respect to all Disputed Claims, any remaining Cash held shall constitute Available Cash that shall be returned or distributed in accordance with the other provisions of this Plan. All Distributions made under this Article of the Plan on account of an Allowed Claim will be made together with any dividends, payments, or other Distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Claim had been an Allowed Claim on the dates Distributions were previously made to Holders of Allowed Claims included in the applicable Class.

### 4. *De Minimis* Distributions

Reorganized Sky Bridge shall not have any obligation to make a Distribution on account of an Allowed Claim if (a) the aggregate amount of all Distributions authorized to be made on the Distribution Date in question (other than the final Distribution Date) is or has a value less then $250,000, or (b) if the

amount to be distributed to the specific Holder of the Allowed Claim on the particular Distribution Date does not constitute a final Distribution to such Holder and such Distribution has a value less than $10.00. Reorganized Sky Bridge shall have no obligation to make any Distribution, whether final or not, unless and until the total amount of such Distribution to a specific Holder of an Allowed Claim is equal to or greater than $5.00.

### I.    *Fractional Dollars*

Any other provision of this Plan notwithstanding, Reorganized Sky Bridge shall not be required to make Distributions or payments of fractions of dollars.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

### J.    *Allocation of Plan Distributions Between Principal and Interest*

To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for all income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

### K.    *Distribution Record Date*

Reorganized Sky Bridge shall have no obligation to recognize the transfer of or sale of any participation in any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute only to those Holders of Allowed Claims who are Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date.  Instead, Reorganized Sky Bridge shall be entitled to recognize and deal for all purposes under this Plan with only those record holders stated on the official claims register as of the close of business on the Distribution Record Date.

## VII.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    *Rejected Contracts and Leases*

Except as otherwise provided in the Confirmation Order, the Plan, or any other Plan Document, the Confirmation Order shall constitute an order under Bankruptcy Code section 365 rejecting all prepetition executory contracts, including purchase orders, and unexpired leases to which the Debtor is a party, to the extent such contracts or leases are executory contracts or unexpired leases, on and subject to the occurrence of the Effective Date, unless such contract or lease (a) previously shall have been assumed, assumed and assigned, or rejected by the Debtor, (b) previously shall have expired or terminated pursuant to its own terms before the Effective Date, (c) is the subject of a pending motion to assume or reject on the Confirmation Date, or (d) is identified in Exhibit B to the Plan as an insurance agreement of the Debtor; provided, however, that the Debtor may amend such Exhibit B at any time prior to the Confirmation Date; provided further, however, that listing an insurance agreement on such Exhibit shall not constitute an admission by a Debtor that such agreement is an executory contract or that the Debtor has any liability thereunder.

### B.    *Bar to Rejection Damages*

If the rejection of an executory contract or unexpired lease pursuant to Article VII.A above gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred

and shall not be enforceable against the applicable Debtor or its Estate, Reorganized Sky Bridge or its respective successors or properties unless a Proof of Claim is filed with the Bankruptcy Court and served on Reorganized Sky Bridge and counsel for Reorganized Sky Bridge within thirty (30) days after service of a notice of entry of the Confirmation Order or such other date as is prescribed by the Bankruptcy Court.

## VIII.    CONFIRMATION AND CONSUMMATION OF THE PLAN

### A.    *Conditions to Confirmation*

The following are conditions precedent to the occurrence of the Confirmation Date:

1.    The entry of a Final Order finding that the Disclosure Statement contains adequate information pursuant to Bankruptcy Code section 1125;

2.    The proposed Confirmation Order shall be, in form and substance, reasonably acceptable to the Plan Proponent; and

3.    All provisions, terms and conditions hereof are approved in the Confirmation Order.

### B.    *Conditions to Effective Date*

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing in accordance with Article VIII.C:

1.    The Confirmation Order shall have been entered and become a Final Order and shall provide that the Debtor and thereafter Reorganized Sky Bridge are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan or effectuate, advance, or further the purposes thereof;

2.    All Plan Exhibits shall be, in form and substance, reasonably acceptable to the Plan Proponent, and shall have been executed and delivered by all parties signatory thereto;

3.    The Plan Proponent shall be authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures, and the agreements or documents created in connection with the Plan; and

4.    All other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed.

### C.    *Waiver of Conditions*

Each of the conditions set forth in Articles VIII.A and VIII.B of the Plan may be waived in whole or in part by the Plan Proponent.  The failure to satisfy or waive any condition to the Effective Date may be asserted by the Plan Proponent regardless of the circumstances giving rise to the failure of such condition to be satisfied.  The failure of a party to exercise any of the foregoing rights shall not be deemed

a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

**D.**     *Consequences of Non-Occurrence of Effective Date*

In the event that the Effective Date does not timely occur, the Plan Proponent reserves all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated, that the Plan be null and void in all respects, and/or that any settlement of Claims provided for in the Plan be null and void. In the event that the Bankruptcy Court shall enter an order vacating the Confirmation Order, the time within which the Debtor may assume and assign, or reject all executory contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of thirty (30) days after the date the Confirmation Order is vacated, without prejudice to further extensions.

# IX.     ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE CLAIMS

**A.**     *Professional Fee Claims*

1.     Final Fee Applications

All final requests for payment of Professional Fee Claims (the "Final Fee Applications") must be filed no later than forty-five (45) days after the Effective Date. Objections, if any, to Final Fee Applications of such Professionals must be filed and served on the Debtor and its counsel, Reorganized Sky Bridge and its counsel, the requesting Professional and the Office of the U.S. Trustee no later than twenty (20) days from the date on which each such Final Fee Application is served and filed. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the allowed amounts of such Professional Fee Claims shall be determined by the Court.

2.     Employment of Professionals after the Effective Date

From and after the Effective Date, any requirement that professionals comply with Bankruptcy Code sections 327 through 331 or any order previously entered by the Bankruptcy Court in seeking retention or compensation for services rendered or expenses incurred after such date will terminate.

**B.**     *Substantial Contribution Compensation and Expenses Bar Date*

Any Person who wishes to make a Substantial Contribution Claim based on facts or circumstances arising after the Petition Date, must file an application with the clerk of the Court, on or before the Final Administrative Claims Bar Date, and serve such application on counsel for the Plan Proponent and as otherwise required by the Court and the Bankruptcy Code on or before the Final Administrative Claims Bar Date, or be forever barred from seeking such compensation or expense reimbursement. Objections, if any, to the Substantial Contribution Claim must be filed no later than the Administrative Claims Objection Deadline, unless otherwise extended by Order of the Court.

**C.**     *Other Administrative Claims*

All other Administrative Claims, other than Professional Fee Claims, must be filed with Bankruptcy Court and served on counsel for Reorganized Sky Bridge and all other parties in interest so as to be received no later than 5:00 p.m., Eastern Time on the Final Administrative Claims Bar Date. In the event that the Debtor, Reorganized Sky Bridge, or any other party in interest objects to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim.

# X.    EFFECT OF PLAN CONFIRMATION

## A.    *Binding Effect*

This Plan shall be binding upon and inure to the benefit of the Debtor and Debtor in Possession, all present and former Holders of Claims and Interests, and their respective successors and assigns, including, but not limited to, Reorganized Sky Bridge.

## B.    *Discharge of the Debtor*

Pursuant to Bankruptcy Code section 1141, Confirmation of this Plan will discharge the Debtor from any and all Claims

## C.    *Releases*

Reorganized Sky Bridge, and any successors and/or assigns, shall be bound by all the releases and restrictions set forth in this Article X.  Any Claims, counterclaims, defenses, setoffs or causes of action against any agent (as defined therein) in response to or as a result of any Claims, counterclaims or causes of action such agent may assert against the Debtor, its Estate or its directors, officers and shareholders are not released by the Plan Proponent, the Debtor, its Estate and/or its directors and officers and such Claims, counterclaims, defenses, setoffs or causes of action are expressly maintained.

## D.    *Releases of Management by Holders of Claim and Equity Interests*

On the Effective Date, effective as of the Confirmation Date, to the fullest extent permissible under applicable law, each Person that has held, currently holds or may hold a Claim or any other obligation, suit, judgment, damages, debt, right , remedy, cause of action or liability of any nature whatsoever, or any Interest, or other right of a Holder of an equity security or other ownership interest that is terminated, and each of its respective Related Parties shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally each member of management of the Debtor serving from and after the Petition Date from any and all Claims, any and all other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever (including, without limitation, those arising under the Bankruptcy Code), and any and all Interests or other rights of a Holder of an equity security or other ownership interest that is terminated, whether liquidated or unliquidated, fixed, or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are or may be based in whole or in part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtor or its assets, property and Estate, the Chapter 11 Case or the Plan, the Disclosure Statement, or any Sale.

## E.    *Justification for Releases by the Debtor and Reorganized Sky Bridge*

The Releases set forth above are being sought because (i) the Debtor knows of no causes of action or claims against the parties to be released, and the costs of investigating any such potential causes of action or claims outweigh the anticipated recoveries of any such action or claim; and (ii) the Releases will give finality to those released parties with respect to their obligations to the Debtor and any payments received by the Debtor.

## F.     Injunction

Except as otherwise provided in the Plan, the Confirmation Order shall provide, among other things, that from and after the Effective Date all Persons who have held, hold or may hold Claims against or Interests in the Debtor are permanently enjoined from taking any of the following actions against the Estate, the Debtor, and Reorganized Sky Bridge on account of any such Claims or Interests: (A) commencing or continuing, in any manner or in any place, any action or other proceeding; (B) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting, or enforcing any lien or encumbrance; (D) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtor; and (E) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided, however*, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of this Plan, and the Confirmation Order; *provided further, however*, that nothing in this Article X.G shall impair (i) the rights of any Holder of a Disputed Claim to establish its Claim in response to an objection filed by Reorganized Sky Bridge, or (ii) the rights of any defendant in a Cause of Action or Avoidance Action to assert defenses in such action.

## G.     Exculpation and Limitation of Liability

Except as otherwise specifically provided in the Plan, the Debtor and each of its members, Related Parties, Professionals, and any of such parties' successors and assigns, shall not have or incur any claim, action, proceeding, Cause of Action, Avoidance Action, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, right to payment, or Claim (as defined in Bankruptcy Code Section 101(5)), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured and whether asserted or assertable directly or derivatively, in law, equity, or otherwise to one another or to any Claimholder or Interest Holder, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission originating or occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Debtor, the Chapter 11 Case, the negotiation and filing of the Plan or any prior plans of reorganization, the filing of the Chapter 11 Case, the pursuit of confirmation of the Plan or any prior plans of reorganization, the Sale Orders, the consummation of the Plan, the administration of the Plan, or the property to be liquidated and/or distributed under the Plan, except for their willful misconduct or gross negligence as determined by a Final Order of a court of competent jurisdiction, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## H.     Justification for Exculpation and Limitation of Liability

The exculpation and limitation of liability of (i) the Debtor's members, Professionals, and any of such parties' successors and assigns set forth above are provided because (a) the Debtor knows of no causes of action or claims against such parties, and the costs of investigating any such potential causes of action or claims outweigh the anticipated recovery from any such action or claim; and (b) the exculpation and limitation of liability will give finality to those parties with respect to their obligations to the Debtor and any payments received by the Debtor.

### I.    Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Chapter 11 Case under Bankruptcy Code section 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.  Upon the Effective Date, the injunction provided in Article X.G shall apply.

### J.    Compromises and Settlements

Pursuant to Bankruptcy Rule 9019(a), the Debtor may compromise and settle various Claims (a) against them and (b) that they have against other Persons.  The Debtor expressly reserves the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against the Debtor and its Estate and Claims that they may have against other Persons up to and including the Effective Date.  After the Effective Date, such right shall pass to Reorganized Sky Bridge and shall be governed by the terms of the Plan.

### K.    Indemnification Obligations

Except as otherwise provided in this Plan, any and all indemnification obligations that the Debtor have pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document, or applicable law shall be rejected as of the Effective Date, to the extent executory.

### L.    Settlement of Claims and Controversies

Pursuant to Bankruptcy Code section 1123(b)(3) and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under, described in, contemplated by and/or implemented by this Plan, including but not limited to the Distributions contemplated by the Plan, the Plan shall constitute a good faith compromise and settlement of all claims or controversies relating to the rights and Claims of the parties entitled to receive such Distributions under the Plan, and shall constitute a good faith compromise and settlement of all controversies relating to Distributions on account of such Claims.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such controversies, and the Bankruptcy Court's finding that such compromises and settlements are fair, equitable and reasonable, and in the best interests of the Debtor, its Estate, and all Claimholders.

## XI.    RETENTION OF JURISDICTION

Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order, substantial consummation of the Plan and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law (provided, however, that notwithstanding the foregoing, with respect to all civil proceedings arising in or related to the Chapter 11 Case and the Plan, the Bankruptcy Court shall have original but not exclusive jurisdiction, in accordance with 28 U.S.C. § 1334(b), including, among other things, jurisdiction to:

1.    Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim or 503(b)(9) Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the determination of requests for the payment of claims entitled to priority

under Bankruptcy Code section 507(a)(1), including compensation of any reimbursement of expenses of parties entitled thereto;

2.      Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Bankruptcy Code sections 330, 331, 503(b), 1103, and 1129(a)(4); provided, however, that from and after the Effective Date, the payment of the fees and expenses of the retained Professionals of organized Sky Bridge shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court except to the extent otherwise provided in this Plan or the Confirmation Order;

3.      Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

4.      Effectuate performance of and payments under the provisions of the Plan;

5.      Hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under or related to the Chapter 11 Case, the Plan;

6.      Enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

7.      Hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

8.      Consider any modifications of the Plan, cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

9.      Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

10.     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated;

11.     Hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan, the Plan Supplement, the Disclosure Statement or the Confirmation Order;

12. Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case;

13. Except as otherwise limited herein, recover all assets of the Debtor and property of the Estate, wherever located;

14. Hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

15. Hear and determine all matters related to the property of the Estate, including, but not limited to, the Unencumbered Assets, from and after the Confirmation Date;

16. Hear and determine the Causes of Action and the Avoidance Actions;

17. Hear and determine all disputes involving the existence, nature or scope of the injunctions, indemnification, exculpation and releases granted pursuant to this Plan, the Sale Orders and/or the Asset Purchase Agreements;

18. Hear and determine all disputes or other matters arising in connection with the interpretation, implementation or enforcement of the Asset Purchase Agreements and the Sale Orders;

19. Hear and determine all matters related to (i) the property of the Estate from and after the Confirmation Date, (ii) the activities of Reorganized Sky Bridge that require Court approval prior to the closing of the Chapter 11 Case;

20. Hear and determine disputes with respect to compensation of Reorganized Sky Bridge and Reorganized Sky Bridge Professionals;

21. Hear and determine all disputes involving the existence, nature and/or scope of the injunctions and releases provided herein, including any dispute relating to any liability arising out of any termination of employment or the termination of any employee or retiree benefit provision, regardless of whether such termination occurred prior to or after the Effective Date;

22. Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

23. Enforce all orders previously entered by the Bankruptcy Court;

24. Dismiss any and/or all of the Chapter 11 Case; and

25. Enter a final decree closing the Chapter 11 Case.

## XII.    MISCELLANEOUS PROVISIONS

### A.    *Modifications and Amendments*

The Plan Proponent may alter, amend or modify the Plan or any Exhibits thereto under Bankruptcy Code section 1127(a) at any time prior to the Confirmation Date. After the Confirmation

Date and prior to substantial consummation of the Plan as defined in Bankruptcy Code section 1101(2), the Plan Proponent may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Court.

**B.      *Severability of Plan Provisions***

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, then the Bankruptcy Court, at the request of the Plan Proponent, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**C.      *Successors and Assigns***

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of that Person.

**D.      *Payment of Statutory Fees***

All fees then due and payable pursuant to 28 U.S.C. § 1930, as determined by the Court at the Confirmation Hearing, shall be paid on or before the Effective Date by the Debtor. All such fees that become due and payable thereafter by a Debtor shall be paid by Reorganized Sky Bridge. Reorganized Sky Bridge shall pay quarterly fees to the U.S. Trustee until the Chapter 11 Case are closed or converted and/or the entry of final decrees. The Debtor, through Reorganized Sky Bridge, shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformance with the U.S. Trustee Guidelines. The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be paid by the Debtor and/or Reorganized Sky Bridge.

**E.      *Plan Supplement***

The Plan Supplement shall be filed with the Clerk of the Bankruptcy Court at least five (5) business days prior to the Voting Deadline or by such later date as may be established by order of the Bankruptcy Court. Upon such filing, all documents included in the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal business hours. Holders of Claims or Interests may obtain a copy of any document included in the Plan Supplement upon written request to the Debtor in accordance with the Plan.

**F.      Service of Documents**

Any notice, request or demand required or permitted to be made or provided to or upon the Reorganized Sky Bridge under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, and (d) addressed as follows:

*Reorganized Sky Bridge:*

WOMBLE, CARLYLE, SANDRIDGE
     & RICE PLLC
Steven K.  Kortanek (Del.  Bar No.  3106)
222 Delaware Avenue
Suite 1501
Wilmington, Delaware 19801
Telephone:  (302) 252-4320
Facsimile:  (302) 252-4330

**G.      Plan Supplement(s)**

Exhibits to the Plan not attached hereto shall be filed in one or more Plan Supplements by the Exhibit Filing Date.  Any Plan Supplement (and amendments thereto) filed by the Plan Proponent shall be deemed an integral part of the Plan and shall be incorporated by reference as if fully set forth herein. Substantially contemporaneously with their filing, the Plan Supplements may be viewed at the office of the clerk of the Court or its designee during normal business hours, by visiting the Court's website at www.deb.uscourts.gov (PACER account required).  Holders of Claims and/or Interests may obtain a copy of any Plan Supplements upon written request to the Debtor in accordance with the Plan.  The documents contained in any Plan Supplements shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

**H.      Tax Reporting and Compliance**

Reorganized Sky Bridge is hereby authorized, on behalf of each of the Debtor, to request an expedited determination under Bankruptcy Code section 505(b) of the tax liability of the Debtor for all taxable periods ending after the Petition Date through and including the Effective Date.

*I.*       *Filing Of Additional Documents*

On or before substantial Consummation of this Plan, the Debtor shall file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.


Dated: August 2, 2010


SKY BRIDGE RESORTS COMMUNITY, L.L.C.

By: Pivot Capital Group, LLC, its Sole Member

/s/ John Surdoval
Managing Member

CHDS01 606589v1

WCSR 4429167v1